with the court's permission, I'd like to try and reserve two minutes for rebuttal. This case turns on the same issue that the first major Indian country jurisdictional case turned on back in 1883 when the Supreme Court decided ex parte Crow Dog. And that issue is the ability, the congressional authority to act and the requirement that Congress provide a clear statement before jurisdiction will be assumed, particularly in Indian country. As the court said in 1883, intrusions into tribal sovereignty should not be based on argument and inference and a court will only find jurisdiction exists based on a, quote, clear expression of the intention of Congress. If you fast forward 135 years to cases like Dean and Honeycutt, the clear statement rule has only been strengthened. Nowhere in the Assembly of Crimes Act is there any clear indication that Congress intended for it to apply to Indian country. In fact, if you look at the purpose and the context of the Assembly of Crimes Act, the stronger evidence is that Congress intended that it not apply to Indian country. Well, but in light of Williams v. United States and United States v. Marcius and other cases that have stated that the ACA applies to Indian country, why should we not consider it a well-settled issue? So Williams v. United States, the issue presented in that case was whether or not the state crime could not be assimilated because a Federal statute already defined the crime. No party brought up any of the jurisdictional issues. And as the court said in Higgins v. Levine. But if the ACA didn't apply to Indian country, they wouldn't have gotten where they were, right? Well, as the court said in Higgins v. Levine, when questions of jurisdiction have been passed on in prior decisions this Court has never considered itself bound when a subsequent case finally brings the jurisdictional issue before us. But in Marcius, this Court said Amicus argues that Williams did not decide the question of whether the ACA is applicable to Indian country. We disagree. Why hasn't this Court already decided and rejected the argument you've made such that we're bound to that result? For a couple of reasons. First, as the district court in Washington, D.C. said in Santa Ana v. Hodel, which was decided after Marcius, they indicated no court has ever directly addressed whether the act would apply to Indian lands. Well, I'm not sure how that tells us we're not bound by a decision of our court because the district court in Washington, D.C. opined contrary. The State. You accept the proposition we're bound by the precedent of our own court. Yes. How is it we're not bound by Marcius? You may argue Marcius is wrong. You may argue we should call for en banc reconsideration. But I'm baffled as to how we're not bound by it. Well, because as Justice Scalia said in National Aeronautics Space Administration v. Nelson, opinions which do not supply any coherent reason for a legal principle are not due stare decisis effect. The decision in Marcius and Amicus brought up the jurisdictional issue. And in a single, first the Marcius court in the footnote says to Williams, which just did not decide the jurisdictional issue. Well, that's not what the panel in Marcius said. It said explicitly, we disagree. So you can argue all you want as to what Williams decided, but we've got a panel that said they view it differently. And in that footnote, they go on to explain and elaborate on its conclusion as to why it reaches that result. Well, I'm not sure they provide much explanation. I believe it's a. They may not provide much explanation that satisfies you, but you're going to have a hard time denying to me that this footnote exists. I agree it exists. The other reason I don't think it's binding on this Court is that it's severely undermined by Coeur d'Alene v. Tribe of Idaho. In Coeur d'Alene v. Tribe of Idaho, the issue was, does the phrase military and other reservations mean that tax laws apply to Indian reservations? That language is far clearer than the language in Section 7 of the, defining which laws, where the ACA applies to. And yet this Court said that that language was not specific enough, particularly given Congress's ability to speak clearly in other statutes, to apply a tax law to Indian country. So I think the Marcier reasoning has been severely underlined by Coeur d'Alene v. Tribe of Idaho, and Marcier has never been cited by the Supreme Court that I'm aware of. I just, I don't think that the. And how does that affect as to whether I'm bound by it? Well, I think it speaks to the fact that the. I mean, the Supreme Court doesn't often cite Ninth Circuit decisions except when it's getting ready to overrule them. So, but it doesn't answer my concern as to whether or not I'm bound by Marcier's. I don't think you are because of the intervening authority, because of the lack of coherent reasoning within it, and because, frankly, of the party presentation principle. The parties in Marcier's did not raise the jurisdictional issue. It was raised by amicus. And finally, I'll say Marcier's is distinguishable. In that case, there truly was a gap. There was no federal law on fireworks. There was no tribal law prohibiting the sale of fireworks. And so without federal prosecution, the defendant in that case could have gotten away with the crime with impunity, which is what the ACA is intended to prevent. In this case, Mr. Smith was subject to criminal punishment. I have a question on that, that I want to ask you. Because the amicus brief seems to say that Mr. Smith, in fact, has been punished under the Warm Springs Tribal Code for these same offenses. And I can't find that in the record. So what she's referring to is Mr. Smith was prosecuted for a number of crimes, not attempt to elude. And I did not make this argument in my, at the district court level. Okay. So that's not exactly a correct statement in the amicus brief, that he's been prosecuted for the eluding, the evading crimes. Eluding, please. He was prosecuted for crimes within the same criminal episode. I think amicus's position is that given the requirement that statutes regarding tribal sovereignty and tribes be construed liberally, the term punished should encompass all of the conduct within a criminal act. But he wasn't prosecuted. He wasn't punished in tribal court for eluding the police, right? He was prosecuted for reckless endangerment in DUI, I believe. Okay. So I don't think that any court has ever directly addressed this issue. And given the weighty sovereign interest at issue and the repeated insistence that Congress speak clearly on issues of jurisdiction, particularly in Indian country, I don't think any court has ever addressed this issue explicitly. And we are asking that the court do that. If the court does do that, I think the evidence is clear that the Assimilative Crimes Act does not apply to Indian country. There is no clear statement from Congress that it does so. And Congress knows how to write these laws. They did it with the Major Crimes Act, in which they said state law crimes are going to be applicable to Indian country. They did it with Public Law 280, in which they said that with the consent of tribes, tribes can consent to state law jurisdiction. Do you want to save any time? I'd like to save two minutes. Can I ask a question? Certainly. Why wouldn't it apply through ICCA? It cites that as well. The reasons it would not apply through the Indian Country Crimes Act is there are a number of reasons for that. First, Brian Vietasca County, a United States Supreme Court case which interpreted the phrase general laws of civil application, said that that was not specific enough to warrant an intrusion into tribal sovereignty and tax matters. The phrase general laws of criminal laws is virtually identical to that phrase in the United States Supreme Court case, and it's a bigger sovereign issue when we're talking about stripping somebody of their freedom as opposed to merely taxing them. It also makes much of the Indian Country Crimes Act redundant. If Section 7, which the government contends, lists the places that the ACA applies to, and they contend it applies to Indian Country, then that portion of the Indian Country Crimes Act would be redundant. So those are a couple of basic reasons why the Indian Country Crimes Act does not make the Similar Crimes Act applicable to Indian Country. Okay. I'll give you two minutes for rebuttal. Thank you. Good morning. Good morning. May it please the Court, Paul Maloney for the United States. And I'll just jump right in, Your Honors. If we're talking about Williams and Marseilles, and one of the things that is important to the government and, frankly, is important to this circuit, is to not create a circuit split where you don't have to. And I think in their brief, defendant argues that Marseilles is the footnote in Marseilles is dicta. And although it was not argued this morning, they dwell on that significantly, that Marseilles' footnote was not argued there. It was actually conceded by the defendant that there was jurisdiction in Marseilles. Although amicus raised it, the Court felt necessary to respond and did so in that footnote that we've been discussing this morning. But I would note, and we do cite to Thunderhawk in the Eighth Circuit, Pino in the Tenth Circuit, and Saussure in the Seventh Circuit, all those circuits apply the ACA to Indian Country as the government has done here. The government did so, and the Court correctly found at trial, denying defendant's motion to dismiss, the plain language of the statutes working together here allow for Federal jurisdiction in this case. So is there anything in the legislated history of the ACA that expressly indicates Congress intended the law to apply to Indian Country? I'm unaware, Your Honor, this morning off the top of my head to answer your question, but I believe the plain language of the statute that Congress uses talks about the general laws of the United States, and certainly the case law that interprets that applies the ACA as a general law of the United States through the Indian Country Crimes Act to those crimes committed in Indian Country. Well, so let me ask you this. Does the ACA, when applied to Indian Country, subject to the exceptions in the ICCA, or can it operate independently of the ICCA? I think it can for general crimes of the United States within the bounds of the Indian Country Crimes Act, also bounded by the Major Crimes Act. So laws of general applicability do apply in Indian Country, unless it's an Indian against Indian crime that is not covered by the Major Crimes Act, unless the individual has been punished by the law of the tribe, or it is a crime that is expressly preserved to the tribe via their treaty. So those are the three exceptions? Yes, Your Honor. Okay. So if we — I mentioned, I asked of Appellant's counsel the question about whether Smith's offense were already subject to Warm Springs Tribal Code, and whether he'd been previously punished by the tribal court for similar offenses, why the Federal Government is exercising jurisdiction over these State-defined offenses? The Government — the Federal Government is exercising its jurisdiction here because the law allows for it. Although not in the record, Your Honor, and I'm happy to not go into things that are not in the record, but I think to do so, or to answer your question squarely, I would have to explain why and the prosecutorial reasons in this case. I think it is in the record that the defendant was on supervision for the same offense, for eluding the police on a reservation in Warm Springs, when he committed these offenses. That's the question. The reason that I asked was because the amicus brief said that he basically had been — that he'd been punished for the same crime that you're prosecuting him for. And what I understood counsel for the appellant to say was, well, no, not exactly, but for things that happened on that day, but not that crime. The tribe did not prosecute him for eluding the police. And there were two instances of eluding the police. The tribe prosecuted him for DUI and reckless endangering, and the defendant did not preserve or raise below that any of the exceptions to the Indian Country Crimes Act applied to him in this instance. And the government's position is that those exceptions wouldn't have applied because he was not prosecuted for the two crimes that he was charged in federal court. Okay. So the analysis, to get to your position, is the ACA, you're saying Marcy's or whatever, Marcy's. It says it does apply, and you're arguing that it does. So then under ICCA, there's no exceptions, is what — he doesn't qualify under the three exceptions. And then you go to, what, subsection 1153B of the MCA allows the federal government to assimilate state law definitions for certain crimes that are not defined in federal law? Is that how we get to this? We're not proceeding under 1153 jurisdiction in this case, Your Honor. We're proceeding upon jurisdiction granted under 1152 as a general law of the United — with the Assimilated Crimes Act acting as a general law of the United States. The Assimilated Crimes Act then operates to incorporate the law of Oregon as a federal law to provide uniform enforcement and protecting of the Warm Springs community by enforcing that law that the defendant would be subject to had the crime not occurred on the reservation. Okay. And unless the panel has additional questions for me, I'm happy to submit on our briefs. The panel does not appear to have additional questions. Thank you. Thank you. Thank you. I'd like to begin with the argument that there's going to be a circuit split here, and the government is — All right. Well, I gave you two minutes, so use your two minutes wisely. Thank you. There's not going to be a circuit split here. If you read cases like Sosor and Pino, what each of those cases does is it addresses whether or not exceptions within the Indian Country Crimes Act are applicable. In sort of the preamble to establishing why the defendant's in court, they mention that the ACA is one of the general laws applicable to Indian Country and generally cite directly to Williams, which, of course, never decided that issue. So, again, there are cases in which the jurisdictional issue simply is not presented to the court. So I don't think it would create a circuit split because, frankly, the closest the court has ever come to explicitly addressing the jurisdictional issues raised in this case is Marcier's, as we've discussed, and they do that in a footnote. Finally, as to the — I'd like to say two things briefly about, one, the general — the phrase general laws of criminal application in the Indian Country Crimes Act sweeps in the Assimilative Crimes Act. That just isn't compatible with the court's decision in Bryan v. Itasca County where, again, they said general laws of civil application was not specific enough to warrant an intrusion into tribal sovereignty. And finally, you asked a question about 1153, the Major Crimes Act. We can see that it has nothing to do in terms of the way the government prosecuted Mr. Smith in this case. However, as the court in Quiver said, the explicit enumeration of State law crimes that can be assimilated into Indian Country carries with it the implication that they meant to limit it to those crimes. And therefore, the Indian Country Crimes Act is not simply another statute that allows the government to assimilate State crimes through the Assimilative Crimes Act into Indian Country. That's what the Major Crimes Act does. Okay. Thank you both for your argument. This matter will stand submitted. As indicated, the court will take a 10-minute recess, and then we'll resume with the next cases on calendar. Thank you.
judges: Fisher, Clifton, Callahan